# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 03:05cr117 |
| | : | 03:09cv1832 |
| | : | 03:07cr090 |
| v. | : | 03:09cv1833 |
| | : | |
| **JOHN C. TANIS, III,** | : | (Judge Munley) |
| **Defendant** | : | |

## MEMORANDUM

Before the court for disposition are the defendant's identical motions to vacate, set aside or correct his sentence (Doc. 137 of No. 03:05cr117; Doc. 30 of No. 03:07cr090) filed pursuant to 28 U.S.C. § 2255.[1] The matters have been fully briefed and are ripe for disposition.

## BACKGROUND

In February 2005 a cooperating witness informed the Federal Bureau of Investigation ("FBI") that Defendant John C. Tanis, III ("Tanis") asked the witness to (1) convert two non-functional Thompson Machinegun model 1928 A-1 receivers into functional automatic receivers; (2) thread a .22 caliber rifle barrel and a .22 caliber handgun barrel to accommodate silencers; and (3) inquired about ordering fifty Thompson Machinegun barrels, ten of which were to have threaded barrels. (Ciminal Compl., Aff. of Special Agent Joseph Noone at ¶¶ 2, 3 (Doc. 1)). Tanis had informed the witness that he had a contract outside the United States for fifty Thompson Machineguns. (Id. at ¶

---

[1] We address the defendant's two motions in one opinion because it is more efficient to do so. The defendant's motions are identical in each of his two cases and the United States has issued a single response which addresses both cases. Citations to the documents on the record are from the defendant's firearms-related case, No. 03:05cr117, unless otherwise specified, because that is the older case. Where we cite to documents from the defendant's misprision of a felony case, Nos. 03:06cr302 and 03:07cr090, we have specified the case number.

3). The witness performed the requested conversion, giving one receiver to Tanis and keeping the other for further modifications. (Id. at ¶ 4). The witness confirmed that the converted firearm he kept operated in full automatic. (Id.)

The FBI checked Tanis's criminal background and determined that Tanis had a New Jersey felony conviction for an illegal firearm. (Id. at ¶ 8). A second cooperating witness was interviewed by the FBI on February 24, 2005. (Id. at ¶ 9). The second witness had, eighteen months prior, observed a large number of firearms kept in safes in Tanis's residence at 70 Cabin Road, Tunkhannock, Pennsylvania. (Id. at ¶ 9).

On March 4, 2005, the first cooperating witness met with Tanis and was given four more Thompson Machinegun receivers. (Id. at ¶ 10). This meeting was recorded on video and audio. (Id.) Tanis and the witness discussed the purchase of an additional fifty barrels. (Id.) Tanis indicated that he still wanted ten of the barrels fit for a special purpose. (Id.) Tanis explained that the receivers were coming from the former Soviet Union and that customs could not recognize them because the receivers lacked a trigger mechanism. (Id.) Tanis stated that he kept the first receiver converted by the witness at his home. (Id.) Tanis also stated that he had a place in his home to hide the other completed machineguns. (Id.) Finally, Tanis stated that he would bring three silencers to the witness to make sure they fit the barrels. (Id.)

On March 7, 2005, the second cooperating witness informed the police that Tanis had returned from the Ukraine on March 3, 2005. (Id. at ¶ 11). An agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") confirmed on March 7, 2005 that Tanis had not been pardoned for his New Jersey felony conviction. (Id. at ¶ 12). The agent also examined the receivers Tanis gave to the first cooperating witness and confirmed that they

constituted "machineguns" and "firearms" under 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(3). (Id. at ¶ 13).

On March 8, 2005 law enforcement officers confronted Tanis and informed him that a search warrant was going to be executed on his home in Tunkhannock. (Id. at ¶ 14). A search of the residence resulted in the seizure of more than one dozen hunting rifles, ammunition, and Thompson Machinegun parts. (Id.)

The FBI arrested Tanis on March 8, 2005. Tanis was charged with possession of a firearm by a felon, 18 U.S.C. § 922(g), and possession of machineguns, 18 U.S.C. §§ 922(o) and 924(a)(2). (Criminal Compl. (Doc. 1)). On March 9, 2005 Attorney David Cherundolo ("Cherundolo") was appointed to represent Tanis. (CJA 20 (Doc. 8). On March 22, 2005, a Federal Grand Jury returned a two count indictment charging that Tanis, having been previously convicted of a crime punishable by imprisonment exceeding one year, possessed 109 firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count I) and that Tanis unlawfully possessed machineguns, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Count II). (Indictment (Doc. 11)).

On March 23, 2005, Cherundolo moved to withdraw his appearance as attorney. (Doc. 14). This Court granted that motion on March 29, 2005, and Attorney Gerard Grealish was added that day. (Doc. 15). The next day, March 30, 2005, Attorney Grealish was replaced on the docket with Attorney William Ruzzo ("Ruzzo"). Ruzzo was appointed to represent Tanis on April 4, 2005. (CJA 20 (Doc. 16)).

On March 13, 2006, the United States Attorney filed a superseding information. (Doc. 43). Count I of the superseding information charged Tanis with having been convicted of a crime punishable by imprisonment exceeding

one year and possessing eight firearms, ammunition, and three silencers, in violation of 18 U.S.C. § 922(g)(1). Count II charged that Tanis shall forfeit, pursuant to 18 U.S.C. §§ 922(d), 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title and interest in any property which constitutes proceeds traceable to the violations, and specifically listing 178 firearms along with ammunition, machinegun parts, and silencer components. (Id.) That same day, pursuant to a written plea agreement, Tanis pleaded guilty to the superseding information before this Court. (Docs. 43 - 48).

At the plea hearing Tanis admitted that– having been previously convicted of a felony– he possessed firearms and ammunition. (March 13, 2006 Change of Plea Hearing at 14 to 20 (Doc. 151)). Tanis stated that no one coerced him into waiving indictment or pleading guilty. (Id. at 5, 26). He understood that he was waiving the rights which attach to a criminal trial by jury. (Id. at 10 to 13). Tanis affirmed that no one had promised him a particular sentence. (Id. at 35). Tanis stated that he understood that, upon the completion of the presentence report, the court would consult the United States Sentencing Guidelines in determining Tanis' sentence, but those guidelines were advisory only. (Id. at 36 to 37). Knowing these legal precepts Tanis pleaded guilty to the charges in the superceding information. (Id. at 39).

On August 16, 2006, the FBI interviewed representatives of Old Forge Bank in Old Forge, Pennsylvania and M&T Bank in Dallas, Pennsylvania, regarding suspicious activity by Tanis. (Aff. of Special Agent Richard Southeron at ¶¶ 3, 13 (Doc. 2 of No. 03:06cr302)). The FBI interviews and investigation revealed that Tanis made or attempted to make ten deposits at these banks, or branches thereof, and that at least five of these transactions involved counterfeit checks. (Id. at ¶¶ 4 - 16). The transactions occurred

between March 6, 2006 and August 15, 2006, with only the first transaction predating Tanis's guilty plea of March 13, 2006. (Id.) A criminal complaint was filed against Tanis on August 18, 2006. (Doc. 1 of No. 03:06cr302).

On September 5, 2006, he was indicted for bank fraud, 18 U.S.C. § 1344, possessing and uttering forged securities, 18 U.S.C. § 513(a), and passing and attempting to pass false and fictitious financial instruments and documents, 18 U.S.C. § 514(a)(2). (Doc. 13 of No. 03:06cr302). He pleaded guilty on March 5, 2007, to a superseding information charging him with misprision of a felony, 18 U.S.C. § 4, pursuant to a binding plea agreement. (Doc. 6 of No. 03:07cr090). The plea agreement, under Federal Rule of Criminal Procedure 11(c)(1)(C), called for a sentence of twelve months plus one day for misprision of a felony, to run consecutive to Tanis's gun sentence. (Doc. 3 of No. 03:07cr090).

During the plea hearing Tanis admitted that he deposited or attempted to deposit approximately six forged or counterfeit checks and that upon learning that they were forged or counterfeit he did not notify law enforcement authorities as soon as possible. (March 5, 2007 Change of Plea Hearing at 14 to 15 (Doc. 41 of No. 3:07cr090)). Tanis stated that no one coerced him into pleading guilty. (Id. at 15). He understood that he was waiving the rights which attach to a criminal trial by jury. (Id. at 11, 12). Tanis stated that he understood that, upon the completion of the presentence report, the court would consult the United States Sentencing Guidelines in determining Tanis' sentence, but that those guidelines were advisory only. (Id. at 22). Knowing this, Tanis pleaded guilty to the charges in the superceding information. (Id. at 24).

On March 30, 2007, this Court held two sentencing hearings for Tanis. Tanis was sentenced on his firearms-related plea to imprisonment for a term

of sixty months, followed by supervised release for a term of three years. (Judgment, Doc. 100). Tanis was sentenced on his misprision of a felony plea to imprisonment for a term of twelve months and one day to run consecutive to his firearms-related imprisonment. (Judgment (Doc. 10 of 03:07cr090).

On April 11, 2007, Tanis filed a notice of appeal on his firearms-related conviction. (Doc. 101). On June 5, 2007, Tanis moved for property maintenance. (Doc. 108). On January 18, 2008, Tanis moved for return of his property. (Doc. 116). This Court denied Tanis's motion as untimely on April 10, 2008. (Doc. 118). On April 18, 2008, the United States made a final motion for forfeiture of property as to Tanis. (Doc. 121).

On July 30, 2008, the United States Court of Appeals for the Third Circuit affirmed Tanis's sentence of seventy-two months for possession of a firearm, 18 U.S.C. § 922(g) and misprision of a felony, 18 U.S.C. § 4. (Doc. 127-2). The Court of Appeals found that this Court properly considered the factors listed in 18 U.S.C. § 3553 in imposing Tanis's sentence. (Id.)

On September 22, 2009, Tanis filed the instant motions to vacate under 28 U.S.C. § 2255. (Doc. 137; Doc. 30 of No. 03:07cr090). Upon receipt of the Tanis's *pro se* motions, the court issued notices of election to the defendant pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999). (Doc. 138; Doc. 31 of 03:07cr090). Tanis did not respond to those orders. Accordingly, we treat his motion as-filed, that is, as a motion made pursuant to 28 U.S.C. § 2255. (See Doc. 138; Doc. 32 of 03:07cr090).

On February 8, 2010, the United States filed reply briefs in opposition to Tanis's motions to vacate. (Doc. 146; Doc. 37 of 03:07cr090). On October 5, 2009, this Court entered a final order of forfeiture of property as to Tanis. (Doc. 140). On March 23, 2010, Tanis filed a motion for oral hearing of his

motion to vacate, bringing the cases to their present posture. (Doc. 150).

**STANDARD OF REVIEW**

Defendant moves for relief under 28 U.S.C. § 2255, which reads in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that [1] the sentence was imposed in violation of the Constitution or laws of the United States, or that [2] the court was without jurisdiction to impose such sentence, or that [3] the sentence was in excess of the maximum authorized by law, or is [4] otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255.

A defendant's potential claims that his "sentence was imposed in violation of the Constitution" are limited, however, if he pleaded guilty. Id. "By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers." Florida v. Nixon, 543 U.S. 175, 187 (2004) (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969); see also Marrow v. United States, 772 F.2d 525, 527 (1985) (a defendant who pleads guilty may not raise constitutional violations which occurred prior to the plea) (citing Tollett v. Henderson, 411 U.S. 258, 266-67 (1973). Such a defendant may still claim a violation of his right to effective assistance of counsel, to the extent that the ineffectiveness impinged upon the voluntariness and intelligence with which the defendant pleaded. See Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by

7

competent counsel, may not be collaterally attacked.").

**DISCUSSION**

Defendant's motion raises eight arguments. We will address each argument in turn.

**I. Ineffective Assistance of Counsel**

Tanis claims that his attorneys– David Cherundolo and William Ruzzo– rendered ineffective assistance of counsel. A claim of ineffective assistance of counsel based on a negotiated plea is analyzed under the two-part test developed by the United States Supreme Court in Strickland v. Washingon, 466 U.S. 668 (1984). Hill v. Lockhart, 474 U.S. 52, 58 (1985). First, the defendant must show that counsel's performance was deficient. Strickland, 466 U.S. at 687. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id.; Flamer v. State of Delaware, 68 F.3d 710, 727-28 (3d Cir. 1995). There must be proof that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Flamer, 68 F.3d at 728.

The second prong of the ineffectiveness of counsel claim requires that the defendant establish that the deficient performance was prejudicial. Id. "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The Third Circuit Court of Appeals has suggested that, because few cases will satisfy the prejudice prong, a district court should reverse the steps of the Strickland test and first determine whether a defendant would have been prejudiced even assuming objectively deficient conduct. McAleese v. Mazurkiewicz, 1 F.3d 159, 170-71 (3d Cir. 1993) (citing United States v. Fulford, 825 F.2d 3, 8 (3d Cir. 1987).

We must be highly deferential to counsel's decisions as there is a strong presumption that counsel's performance was reasonable. Strickland, 466 U.S. at 689. "The defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" United States v. Kauffman, 109 F.3d 186, 189 (3d Cir. 1997) (quoting Strickland, 466 U.S. at 689). Moreover, the Third Circuit Court of Appeals has held that: "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Kauffman, 109 F.3d at 190 (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Finally, in the context of a guilty plea, a defendant may only claim that counsel was ineffective if it rendered the plea involuntary or unintelligent. Hill, 474 U.S. at 56. The voluntariness of a plea, in turn, "depends on whether counsel's advice was 'within the range of competence demanded of attorneys in criminal cases.'" Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

### A. Attorney David Cherundolo

Tanis claims that Cherundolo's assistance was ineffective because Cherundolo (1) withdrew his representation, allowing evidence to be lost and tampered with; (3) failed to inspect and challenge the evidence of silencer components; (4) failed to meet with Tanis in a timely manner; (5) failed to prepare for a detention hearing; (6) failed to visit the scene of the crime; and (7) failed to secure qualified assistance. Tanis claims these allegations show deficient performance which prejudiced his defense.

The United States responds generally that Tanis's claims lack sufficient detail to satisfy either prong of the Strickland analysis. The United States suggests that the determinative factor in Tanis's decision to negotiate a plea

was the evidence against him, not the ineffectiveness of his counsel.

We cannot conclude that Cherundolo's alleged deficient conduct, even when assumed true (see McAleese, 1 F.3d at 170-71), was prejudicial or that it rendered Tanis's plea involuntary. There is no reasonable probability that, but for Cherundolo's deficient conduct, Tanis would have proceeded to trial. Cherundolo was Tanis's attorney for a total of sixteen days. Tanis does not specify what evidence was lost or tampered with during this time-frame, or more important, how that lost evidence rendered his eventual plea involuntary. The record shows unequivocally that Tanis was a convicted felon. Tanis does not suggest there was anything Cherundolo could have done to exclude the fact that the government seized nearly two hundred guns from Tanis, including machineguns. At most, Tanis argues that the silencers could have been challenged, though he does not suggest how. Neither does Tanis explain how Cherundolo's supposed failure to challenge the silencers during this sixteen day period forced him to plead guilty involuntarily. Regarding Cherundolo's alleged failure to meet, failure to inspect evidence, failure to prepare for a detention hearing, and failure to hire an expert, these deficiencies cannot reasonably be said to render his plea involuntary one year later. Tanis simply does not explain how these presumed failures robbed him of his choice to proceed to trial. Having found no prejudice, there is no need to determine whether Cherundolo's conduct was or was not deficient. In short, given (1) the of evidence supporting Tanis's guilt, (2) the lack of specificity in Tanis's claims, and (3) the strong presumption of Cherundolo's reasonableness, we conclude that Tanis is not entitled to have his sentence vacated, set aside, or corrected.

**B. Attorney William Ruzzo**

Tanis claims that Ruzzo's assistance was ineffective throughout his

representation.  Tanis complains that during the trial preparation and plea negotiation stage, Ruzzo: (1) showed no interest in preparing Tanis's case for trial and focused only on plea bargaining; (2) failed to conduct discovery, with the exception of obtaining a surveillance video; (3) failed to obtain a stay of the case pending the resolution of District of Columbia v. Heller, - - U.S. - -, 128 S. Ct. 2783 (2008), *aff'g* Parker v. District of Columbia, 478 F.3d 370 (D.C. Cir. 2007); (4) failed to hire an expert witness to testify that Tanis's gun collection was almost entirely sports-related; and (5) indicated that this Court could sentence Tanis below the thirty-three to forty-four month range, given Tanis's age and health.[2]  Tanis claims that this conduct was deficient and prejudicial.

United States responds that, because Tanis entered a plea agreement, Ruzzo's trial preparation is irrelevant.  The United States notes that Ruzzo obtained a favorable plea for Tanis, under the circumstances.  The United States argues that Tanis fails to provide any details as to what sort of discovery Ruzzo should have conducted and that an expert on the sporting nature of Tanis's collection would have been unhelpful to Tanis.  Finally, the United States argues that this Court did have discretion to consider Tanis's age and health, just as Ruzzo had counseled.

---

[2] Tanis further argues that, in appealing Tanis's conviction, Ruzzo failed to argue Tanis's conviction violated the Second Amendment to the United States Constitution; failed to obtain a downward departure based on the sporting nature of the gun collection; failed to argue a defense of ownership by inheritance; and failed to argue that the years since Tanis's predicate felony rendered his conviction invalid.  We need not analyze these arguments because, in the guilty plea context, counsel's performance during an appeal cannot have had any bearing on whether or not a defendant's decision to plead guilty was made voluntarily and intelligently.  See Hill, 474 U.S. at 56.

Addressing the prejudice-prong first, Tanis has not made any showing that, but for Ruzzo's allegedly deficient advice, he would have proceeded to trial. Presuming Ruzzo did not prepare for trial or conduct discovery and only worked towards a plea, Tanis has still not explained how that rendered his plea involuntary. If Ruzzo had negotiated an unfavorable plea, Tanis could have declined it and then Ruzzo would have prepared for trial. Furthermore, Tanis cannot establish any prejudice by Ruzzo's failure to seek a stay for <u>Heller</u> because the Supreme Court expressly noted that prohibitions on the possession of firearms by felons, such as Tanis, are presumptively lawful regulatory measures. <u>Heller</u>, 128 S. Ct. at 2816-17, n.26.

Ruzzo's failure to hire an expert to opine on the sporting nature of Tanis's illegal gun collection did not prejudice Tanis. It is not reasonably probable that, given the weight of the evidence Tanis faced, he would have faced trial rather than plea if only an expert was hired. As explained below, the fact that his gun collection was largely for sporting purposes does not address the legal fact that as a felon he could not possess a firearm for any purpose, let alone over one hundred firearms.

Tanis's only remaining claim is that Ruzzo told him that this Court could sentence Tanis for fewer than thirty-three months, given Tanis's age and health. In <u>United States v. Marzgliano</u>, 588 F.2d 395 (3d Cir. 1978) the United States Court of Appeals for the Third Circuit found that a misrepresentation by a defense attorney that the district court would impose a certain sentence could render a plea involuntary and support a section 2255 claim. In that case, the defendant's claim– supported by affidavits from his co-defendant and his co-defendant's attorney– was that counsel guaranteed that the defendant's sentence would not exceed a particular length and that he could withdraw it otherwise. <u>Id.</u> at 398. The Third Circuit noted, however,

that "this is not a case where the defendant has merely alleged an erroneous prediction of sentence by his counsel, which this court has held does not render a guilty plea involuntary." Id. at 398, n.6 (citing Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972). Here, Tanis was not prejudiced by Ruzzo's counsel because the departure was couched as a possibility and was accurate, given the Court's discretion in imposing a sentence. See 18 U.S.C. § 3553(a). Having found no prejudice, there is no need to determine whether Ruzzo's conduct was or was not deficient. For these reasons, we conclude that Tanis is not entitled to have his sentence vacated, set aside, or corrected.

## II. Prosecutorial Misconduct

Tanis argues that Assistant United States Attorney ("AUSA") John Gurganus ("Gurganus") engaged in prosecutorial misconduct. We analyze his claims only to the extent that they bear on the voluntariness of his plea because a claim for prosecutorial misconduct does not otherwise fit into the grounds for relief under section 2255. Specifically, Tanis claims that Gurganus (1) failed to appraise the court of Heller which renders the seizure unconstitutional; (2) failed to consider that Tanis had only one felony which should no longer be a felony after Heller; (3) ignored and concealed from the court the sporting nature of Tanis's collection; (4) ignored the "legality" of the silencer components; (5) ignored the Pennsylvania right to collect historical artifacts; (6) ignored the fact that registration of a gun would have violated Tanis's Fifth Amendment right from self-incrimination; (7) ignored a Pennsylvania statutory defense for possession of an automatic firearm; (8) ignored a Pennsylvania defense for ownership by inheritance; (9) failed to investigate customs violations by Tanis's ex-wife; (10) fraudulently disposed of Tanis's property without notice; (11) ignored Tanis's defense of relief from

disability; (12) failed to accurately describe the guns in the inventory list; and (13) that Gurganus took on a case that was too complex.

Tanis argues that AUSA Fran Sempa ("Sempa") (1) conspired to increase Tanis's exposure to criminal penalties; (2) refused to interview Tanis; (3) ignored allegedly exculpatory emails; (4) refused to acknowledge Tanis's attempts to cooperate regarding a bad check at Old Forge Bank; and (5) improperly required restitution to Tanis's mother.

None of Tanis's claims of prosecutorial misconduct against AUSAs Gurganus or Sempa, even if assumed true, cast doubt on the voluntary and intelligent nature of Tanis's plea. See Mabry, 467 U.S. at 508 ("[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). Tanis makes no plausible argument as to why any or all of these allegations forced him to waive his right to trial– at which he could have challenged them. Thus, Tanis's motion to vacate, set aside or correct the sentence conclusively shows that he is not entitled to the relief he seeks.

## III. Constitutional Right

Tanis claims that his conviction violates the Second Amendment. He argues that he relied on a licensed gun dealer in believing his machineguns were lawful. He suggests that his gun range shows that his collection was for sport. He claims that some of his guns were kept in unopened boxes and that the government altered them. He argues that some of the items seized were not firearms. He claims that statutes banning ammunition are an unconstitutional infringement on the right to self-defense. He argues that fully automatic weapons are constitutional, that he kept such weapons responsibly, and that he would have registered them if not precluded by his felony. He claims that the right to register a Class 3 firearm is a right which he has been

14

denied. Finally, he argues that the eleven years since his New Jersey firearm felony should relieve him from disability.

In essence, Tanis claims that neither his New Jersey felony, nor the crimes to which he pleaded guilty in this case ought be punishable under the Second Amendment. He contends largely that Heller extends the Right to Bear Arms to convicted felons and prohibits the government from regulating machineguns and silencers. That understanding of the Second Amendment and Heller is incorrect. The Court in Heller expressly noted that prohibitions on the possession of firearms by felons, such as Tanis, are presumptively lawful regulatory measures. 128 S. Ct. at 2816 - 17, n.26. Furthermore, nothing in the opinion holds that federal firearms statutes prohibiting possession of machineguns, let alone machineguns possessed by convicted felons, are unconstitutional. Finally, and, for our purpose, most important, Tanis's waived these arguments by choosing to plead guilty to his firearms-related indictment. See Marrow, 772 F.2d at 527 (a defendant who pleads guilty may not raise constitutional violations which occurred prior to the plea). For these reasons, Tanis's motion to vacate, set aside, or correct the sentence will be denied.

**IV. Sentencing Court Violated Plea Agreement**

Tanis argues that this Court violated his plea agreement. Tanis claims that he expected a sentence on the low side of a thirty-three to forty-four month range. According to Tanis, this Court accepted his plea despite Heller's pendency. He claims that the Court's rush to trial coerced him into accepting a plea.

We disagree. The plea agreement expressly stated that the Court was not a party to the agreement and was not bound by the recommended term of thirty-three months. (See Plea Agreement at ¶¶ 9, 14 (Doc. 45)). After this

15

agreement was entered into, and before sentencing, Tanis was charged with misprision of a felony, which meant he was not entitled to a three-level reduction for acceptance of responsibility. Further, this Court did not coerce Tanis into accepting a plea by failing to stay the case for Heller. That case had no bearing on Tanis, as a convicted felon in possession of machineguns, therefore a stay would have been inappropriate. For these reasons, Tanis's motion to vacate, set aside, or correct the sentence will be denied.

**V. Deprivation of Property without Compensation**

Tanis alleges that the United States disposed of his property in violation of his Due Process rights. The United States responds that his plea agreement expressly forfeits his rights to the firearms at issue. (See Plea Agreement at ¶ 20 ("By this Agreement, the defendant agrees to forfeit all interests in the properties listed in the Criminal Information . . . .") (Doc. 45)). We agree. As noted above, Tanis waived all non-jurisdictional constitutional claims unrelated to the voluntariness of his plea, including the instant claim. In addition, the plea itself expressly forfeits the property at issue. For these reasons, Tanis's motion to vacate, set aside, or correct the sentence is denied as to his claim of deprivation of property without compensation.

**VI. Excessive Sentence**

Tanis argues, insofar as he interprets Heller to invalidate both his prior firearm felony and his firearms conviction in this case, that this Court sentenced him excessively. Alternatively, he argues that he was entitled to a six level decrease based on the sporting nature of his gun collection pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(b)(2).

The United States responds that Tanis's interpretation of Heller is incorrect, and that as a matter of law he was ineligible for a decrease based on a sportsman's defense. We agree. The Court in Heller expressly noted

that prohibitions on the possession of firearms by felons, such as Tanis, are presumptively lawful regulatory measures. 128 S. Ct. at 2816 - 17, n.26. Heller did not invalidate laws prohibiting possession of machineguns.

Tanis was not eligible for a decrease under USSG § 2K2.1(b)(2). That subsection expressly excludes defendants, such as Tanis, who possess machineguns or silencers. See USSG §§ 2K2.1(b)(2), (a)(1) (specifying Base Offense Level for offenses involving "firearms" under 26 U.S.C.A. § 5845(a), including, *inter alia*, machineguns or silencers such as Tanis's). Because the record conclusively shows that Tanis is not eligible to have his sentence vacated, set aside, or corrected, his motion will be denied as it pertains to his excessive sentence claim.

**CONCLUSION**

For the reasons set forth above, Tanis's motion to vacate, set aside, or correct the sentence will be denied. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 03:05cr117 |
| | : | 03:09cv1832 |
| | : | 03:07cr090 |
| v. | : | 03:09cv1833 |
| | : | |
| JOHN C. TANIS, III, | : | (Judge Munley) |
| **Defendant** | : | |

## ORDER

**AND NOW**, to wit, this 26th day of May 2010, the defendant's motions (No. 03:05cr117 - Doc. 137; No. 03:07cr090 - Doc. 30) filed pursuant to 28 U.S.C. § 2255 are hereby **DENIED**. Based upon the reasoning in our accompanying memorandum, we decline to issue a certificate of appealability. See 28 U.S.C. § 2253(c) and 3d Cir. LAR. 22. The Clerk of Court is directed to close cases numbered 3:09cv1832 and 03:09cv1833.

**BY THE COURT:**

s/ James M. Munley
**JUDGE JAMES M. MUNLEY
United States District Court**